**Bernard Robert BARKAN, Petitioner-Appellant,**

v.

**UNITED STATES of America, Respondent-Appellee.**

**No. 13590.**

United States Court of Appeals Seventh Circuit.

July 6, 1962.

George W. McBurney, Chicago, Ill., for appellant.

Edward R. Phelps, U. S. Atty., Marks Alexander and Leon G. Scroggins, Asst. U. S. Attys., Springfield, Ill., for appellee.

Before SCHNACKENBERG, KNOCH and KILEY, Circuit Judges.

KNOCH, Circuit Judge.

Petitioner, Bernard Robert Barkan, filed a motion *in forma pauperis*, pursuant to Title 28, U.S.C. § 2255, to vacate the judgment and sentence against him. The District Court appointed counsel for petitioner and held extensive hearings, at the conclusion of which the District Judge denied petitioner's motion. The District Judge wrote a lengthy, carefully reasoned opinion, in which he analyzed the evidence and explained in a wealth of detail the bases for his decision, (No. 5870, Oct. 5, 1961).

Petitioner states the contested issues as follows:

1. Is defendant Bernard R. Barkan entitled to have his sentences vacated on the ground that his convictions were procured through the use of perjured testimony known to be perjured by the prosecuting authorities and knowingly used by them to procure the convictions?

2. Is defendant Bernard R. Barkan entitled to have his sentences vacated on the ground that his convictions were procured through the use of perjured testimony irrespective of whether the prosecuting authorities knew of such perjury at the time it was committed?

3. Is defendant Bernard R. Barkan entitled to have his sentences vacated on the ground that, although under indictment for a capital crime, he did not have the assistance of two lawyers at his trial?

Petitioner was tried and convicted of violating the Federal Bank Robbery Statute, Title 18, U.S.C. § 2113, and of con-

spiracy to violate that statute. The capital counts to which he refers consisted of three counts charging him with kidnapping in violation of § 2113(e), which were dismissed on the government's motion at the end of his trial. Petitioner was sentenced to twelve years' imprisonment. He is now serving that sentence.

The District Court found that petitioner was advised of his rights by the Marshal and was particularly told that he could remain in the local jail for a 10-day period during which he could perfect his appeal. Petitioner waived this right in writing and requested removal to the designated institution of confinement for service of his sentence. No appeal was perfected.

At petitioner's trial one of the most damaging witnesses against petitioner was Cecil McAfee. The District Judge studied the complete testimony of this witness at the trial and summarized it in his opinion, setting out the detailed account of numerous conversations between petitioner, Mr. McAfee and one Daniel Lee Pritchard, both of whom were petitioner's tenants, during which plans were laid to rob the State Bank of Nebo, Nebo, Illinois; of various trips to the site of the crime; of the financing of the project by the petitioner; of the delivery of proceeds of the robbery to petitioner; of petitioner's maintaining custody of Mr. McAfee's pistol and then turning it back to him for use in the robbery. Mr. McAfee described how he and Mr. Pritchard perpetrated the crime at Nebo, Illinois, while petitioner remained in Chicago. Mr. McAfee gave this same account in several statements to the authorities at different occasions.

In support of his motion to vacate the judgment and sentence, petitioner offered retraction statements made by Mr. McAfee.

As Mr. McAfee explains it, he was temporarily confined as a "hold over" at the U. S. Penitentiary, Leavenworth, Kansas, en route to the U. S. Penitentiary at Atlanta, Georgia, to which he was being sent to serve a sentence of 10 years after conviction of the Nebo bank robbery. He was originally sentenced to 20 years, but on motion of an attorney appointed by the Court to represent him at the proceedings for reduction of sentence, the term was cut to 10 years.

By virtue of having waived his right to remain in the local jail for a ten-day period in which to perfect his appeal as indicated above, the petitioner, Mr. Barkan, was at the Leavenworth Penitentiary during the short period that Mr. McAfee remained there. Mr. McAfee, in his subsequent statement to the authorities, in which he repudiated the retractions, reported that petitioner and two other convicts sat beside him and remained with him until he signed a handwritten document which constituted a retraction of his testimony at Mr. Barkan's original trial, but which he was not permitted to read at that time. Several days later, an employee of the Penitentiary presented a typewritten statement for his signature. He read that statement. It consisted of a retraction of his testimony and exculpated petitioner. Mr. McAfee asserted that he signed both statements because he feared severe bodily harm or death. He said that when petitioner had presented the original document for signature, petitioner had said in substance:

> "If you don't sign it, you won't make it to Atlanta."

District Judge Poos in discussing the retractions points out that:

> "The original retraction was written out by Barkan in his own handwriting at a time before he saw or talked to McAfee at the prison. This statement contains a serious misstatement of fact when it says that McAfee gave his testimony at the original trial under pressure of six additional undisposed of charges held over his head. The records of this court show that all charges against McAfee were disposed of prior to the time of the Barkan trial."

and

> "McAfee knew that all charges against him were disposed of, but

the admitted author of this statement, Barkan, did not have knowledge of the records of this court."

Petitioner produced witnesses who testified that the retraction statements were not signed under duress. The question of credibility was a matter for decision by the District Court before whom they testified.

On this issue, Judge Poos states:

"[P]risoners brought into court testify that there was no duress and that the statement was freely and voluntarily made. Their testimony is to be viewed in the light of the fact that they are in prison for felonies and the like. It is a fundamental rule of criminal law that evidence of prior conviction can be used to impeach and test the credibility of such witnesses. As against this, McAfee comes into this court and affirms his original story which was first given to the authorities when he was in a hospital suffering from a severe stomach ulcer condition at a hospital in Kentucky. After Barkan filed his petition, McAfee was interviewed by a Federal Bureau of Investigation agent, at which time he said he gave the retraction statement while under fear and duress of the prison code, and again affirmed his story as told to the jury."

A similar question of credibility for the District Court was presented by the testimony of John Hancock, an inmate of Leavenworth Penitentiary, who stated that Mr. McAfee told him petitioner had not been involved in the bank robbery, but that Mr. McAfee had falsely testified against petitioner in return for a decrease in his own sentence. Mr. Hancock said that he also had met petitioner at Leavenworth and had related to him the conversation he had with Mr. McAfee.

The testimony of two Leavenworth guards who stated that they had seen nothing to indicate that threats were made to Mr. McAfee was of a purely negative value. Nobody contended that violent overt gestures were made at the time that Mr. McAfee signed either statement.

Another witness at Mr. Barkan's original trial, Sam Rizzo, who had also been a tenant in petitioner's building, verified the testimony respecting discussion of a proposed robbery of the Nebo bank. He also recognized the weapon used. He testified that petitioner had later given it to him; that it had been found in his room when he was arrested on a charge of disorderly conduct. He fixed the time of the conversation about the proposed bank robbery as in the spring. He stated that at the time he had been watching a telecast of the Cubs playing, he presumed, in spring baseball training.

At the hearing on his motion to vacate, petitioner sought to prove Mr. Rizzo guilty of perjury through letters showing that no such telecast of a Chicago Cubs baseball game occurred. We agree entirely with the District Judge's conclusion that:

"Whether a telecast of a baseball game took place or not is not the material statement. This was the witness' remembrance of the time that the overheard conversation took place, and brought out on cross-examination his recollection of its event. Further it is a matter that could only go to the impeachment of the testimony of the witness or to its weight at the trial. * * * The same can be said about petitioner's charge that Rizzo committed perjury when he stated, at the trial, that he, Rizzo, was arrested by the Chicago police on disorderly conduct charge, rather than a bad check charge, at the time the Chicago police recovered the gun. * * * This could only go to the credibility of the witness at the trial, and must, for the purpose of this proceedings, be deemed to be immaterial. * * * The fact stands out that he was arrested and that the Chicago police did recover the gun, and that he was prosecuted for disorderly conduct."

In considering the allegation that the government's handwriting expert at the

original trial, Curtis R. Thompson, described himself as an expert who testified in the Greenlease kidnapping case, although he had not been a witness in that case, the District Court points out that:

"The witness did not say that he testified in the Greenlease case. He said that he participated in the investigation of it."

Daniel Lee Pritchard, who participated directly in the bank robbery at Nebo, signed a statement for the Federal Bureau of Investigation in which he implicated the petitioner. He subsequently pleaded guilty and was sentenced to a term of ten years. At the time of his sentence his attorney told the Court that Mr. Pritchard would be willing to testify at any future trial in connection with the charges. At that time both Mr. McAfee and Mr. Pritchard had been sentenced and there was nobody left to stand trial on these charges but petitioner. At that time, as the District Court notes, petitioner was out on bond, but prior to trial, he surrendered himself to the F. B. I., who at his request, arranged for his return to the federal section of the City Jail in Springfield, Illinois, where he had access to Mr. Pritchard. During this period a statement was obtained from Mr. Pritchard, the exact nature of which is not disclosed by the record. Petitioner then petitioned the Court for release on his original bail bond which had been cancelled when he surrendered himself. The Court did induce the surety company to reaccept liability on the original bond and petitioner was again released.

The government produced Mr. Pritchard at the original trial of Mr. Barkan and asked the Court to call him as a Court witness. When the Trial Court declined to do so, the government tendered Mr. Pritchard as a witness to the defense. Petitioner contends that the government must have known that Mr. Pritchard would exculpate petitioner, and that the government, therefore, must have also known that Mr. McAfee's testimony was perjured. We cannot agree that this is a reasonable conclusion. However, although Mr. Pritchard was available in

Court, and the government had clearly indicated that he would not be called as a witness for the prosecution, the defense also failed to call him.

He did not testify at the original trial of Mr. Barkan and the District Court indicates:

"The only thing this record shows about Pritchard is the letter by him written to the Court shortly after the conviction of Barkan by the jury. He says in this letter that Barkan was not with him and McAfee at the actual robbery. No one ever stated that Barkan was at the actual robbery. He also says, in this letter,

'The reason I would not take the stand was because they said I would get more time for it, and I did not want to get into any more trouble.'

This, the Court knows, to be untrue."

The District Court concluded:

"I find, as a fact, that McAfee told the truth at the trial and that he was not guilty of perjury. I find also as facts that neither of the Government's witnesses, Sam Rizzo or Curtis E. Thompson, committed perjury. * * *

"Upon all the evidence herein set out, I find as a fact that Bernard Robert Barkan has failed to prove that he was convicted on perjured testimony, and has failed to prove that the United States Attorney had any knowledge of any alleged perjured testimony; * * *"

From our own scrutiny of this extensive record we are satisfied that these findings are abundantly supported by substantial evidence.

Title 18, U.S.C. § 2113(e) provides for punishment by death if the verdict of the jury shall so direct. The three counts charging violation under § 2113(e) were not dismissed until the close of the trial. Thus petitioner asserts that he was entitled to the benefits of Title 18, U.S.C. § 3005 which indicates that where one is indicted for a capital offense the Court before which he is

tried shall, upon his request, assign to the defendant such counsel, not exceeding two, as he may desire. Counsel have not cited, nor has this Court found, any case directly in point. Petitioner made no request for more than one attorney to be assigned to him. The Court did assign competent counsel, a former State's Attorney of Sangamon County, Illinois, who had served in that capacity for eight years and who was thoroughly versed in the criminal law. It was not incumbent on the Court further to advise the petitioner of various specific statutory rights, including such rights as petitioner might have under Title 18, U.S.C. § 3005.

The Court has carefully considered all other points urged by petitioner but finds them to be without merit.

The order of the District Court is affirmed.

This Court wishes to express its appreciation of the painstaking and skilled services rendered by Mr. George W. McBurney, of the Illinois bar, as Court-appointed counsel for petitioner in this appeal.

Affirmed.